IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **Joshua A. Madsen,** | : | **Case No. 1:06 CV 00968** |
| Petitioner, | : | |
| v. | : | |
| **Stuart Hudson,** | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Defendant. | : | |

This matter is before the undersigned Magistrate pursuant to Local Rule 72.2(b)(2). The Petition for a Writ of Habeas Corpus was filed pursuant to 28 U.S.C. § 2254 (Docket No. 1). Respondent filed a Return of Writ (Docket No. 7), and Petitioner filed a Traverse to Respondent's Return of Writ (Docket No. 13). Pending is Petitioner's unopposed Motion for Evidentiary Hearing (Docket No. 14). For the following reasons, the Magistrate recommends that the Motion for Hearing be granted.

## FACTUAL BACKGROUND

Under the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct." *Keith v. Mitchell*, 455 F.3d 662, 666 (6th Cir. 2006) (*citing* 28 U.S.C. § 2254(e)(1) (2000)).

Petitioner met Tonya Carroll in August 2001, and they saw each other romantically on and off until July 2002. On August 2, 2002, Petitioner left two messages on the victim's voice mail threatening to harm her. On August 3, the victim hosted a party at her house in order to celebrate her freedom from Petitioner. She invited all of her friends and some of Petitioner's friends to the party.

On August 5, Petitioner arrived at the victim's home and demanded she let him inside. She opened the door and noticed Petitioner had been drinking. Petitioner started to scream and yell at the victim about her party and forced her upstairs into her bedroom. Once in the bedroom, Petitioner began choking, pushing and punching her

while questioning whether she had been seeing someone else. Petitioner refused to let the victim leave the bedroom. He then forced her onto the bed and told her to remove her clothes. He then raped her using his fingers, mouth, and penis. The victim repeatedly told Petitioner to stop, but he refused. He then demanded she perform oral sex on him. The victim was terrified of what Petitioner would do to her, so she complied with his demands.

After the rape, Petitioner forced the victim to call everyone who had been at the "freedom" party to apologize for any derogatory comments she might have made about him. Petitioner then left the victim's house, only to return later that evening. When Petitioner returned to her home, the victim noticed he had continued to drink and was still intoxicated and angry. In the living room, Petitioner again raped the victim, forcibly performing oral sex on her and engaging in vaginal and oral sex. Petitioner then commanded her to perform oral sex on him, and she complied. Petitioner left the victim's home around 3:00 a.m., when his brother arrived.

As a result of the rapes and beatings on August 5, the victim sought medical attention on August 9 at the Miles-Broadway Health Center; however, the victim was afraid to report the beatings and rapes to the police. On August 18, 2002, Petitioner returned to the victim's home upset because he had learned that she had performed as an exotic dancer at a friend's bachelor party on August 17. Petitioner pushed his way into the victim's home and ordered her to get him a screwdriver. Petitioner asked the victim how much money she had made, but then saw her purse and took the money from it. Petitioner then pushed the screwdriver into the victim's back threatening to stab her, then ordered her outside. He then proceeded to enter a vehicle owned by Nicole Sanders, one of the victim's friends. Petitioner believed that Sanders had damaged his truck. While in Sanders' vehicle, Petitioner destroyed the interior using the screwdriver. He then left the victim's home.

Sanders and the victim went to the police station to file a report as a result of the damage to Sanders' vehicle. At this point, the victim felt she had to notify the authorities of the rapes because she feared her life was in danger. At the police station, she made a report detailing the events occurring on both August 5 and August 18, 2002.

(Docket No. 7, Exhibit 1)

## **PROCEDURAL BACKGROUND**

On August 29, 2002, a Cuyahoga County Grand Jury returned an eleven count indictment as a result of the acts which occurred on August 5, 2002, charging Petitioner with eight counts of rape, in violation of OHIO REV. CODE § 2907.02, one count of kidnaping, in violation of OHIO REV. CODE § 2905.01, and one count of domestic violence, in violation of OHIO REV. CODE § 2919.25 (Docket No. 7, Exhibits 2, 3). Petitioner was also charged with one count of aggravated robbery, in violation of OHIO REV. CODE § 2911.01, for the acts which occurred on August 18, 2002 (Docket No. 7, Exhibit 2).

On September 5, 2002, Petitioner was arraigned and entered a not guilty plea to all charges in the indictment. On November 18, 2002, a jury trial began. At the close of the State's case, Petitioner moved to dismiss the indictment, in its entirety, pursuant to OHIO CRIM. R. 29. The trial court dismissed count ten against Petitioner, which alleged domestic violence (Docket No. 7, Exhibit 1, ¶ 10). On December

9, 2002, the jury found Petitioner guilty of rape on counts one through six and not guilty of rape on counts seven and eight. The jury returned a verdict of guilty on the charge of kidnaping and a verdict of not guilty as to the charge of aggravated robbery (Docket No. 7, Exhibit 1, ¶ 11).

On January 2, 2003, Petitioner was sentenced to three years in prison for each count of rape and three years for kidnaping. The sentences for each count of rape were ordered to run consecutively with each other and concurrently with the three year term for kidnaping. Petitioner was sentenced to a total of 18 years in prison (Docket No. 7, Exhibit 1 ¶ 12).

A timely appeal to the Court of Appeals for the Eighth Appellate District followed[1] (Docket No. 7, Exhibits 1 and 4). The Court of Appeals affirmed the trial court's decision (Docket No. 7, Exhibit 8). Petitioner filed a Memorandum in Support of Jurisdiction in the Supreme Court of Ohio[2] (Docket No.

---

[1] Petitioner presented thirteen assignments of error to the appellate court. (1) The trial court erred in disallowing evidence of the alleged victim's multiple sexually transmitted diseases. (2) The trial court committed plain error in allowing testimony of alleged "other acts" of the defendant in addition to allowing evidence of the defendant's previous sexual activity. (3) The trial court erred in allowing the prosecutor to question a witness about allegations of abuse against the appellant. (4) The trial court erred in ordering consecutive sentences for all six counts of rape where the counts should be merged for the purposes of sentencing. (5) The trial court erred in imposing consecutive sentences without making the appropriate findings and reasons as required by OHIO REV. CODE § 2929.14. (6) The prosecutor committed prosecutorial misconduct by repeatedly eliciting testimony regarding the appellant's incarceration despite admonishments by the trial court. (7) The trial court plainly erred when it allowed the prosecutor to repeatedly question witnesses about the incarceration of the appellant. (8) The trial court erred in allowing the midwife, the treating physician, Crystal Murray and others to testify regarding who allegedly inflicted the injuries claimed by the victim. (9) The trial court erred in not allowing defense counsel to cross examine the alleged victim on why she did not file a police report and as to her alleged fear of the appellant. (10) The trial court erred in allowing several witnesses to testify as to the cycle of violence associated with abusive relationships and persons without first-hand knowledge to testify as to the relationship between the appellant and alleged victim. (11) The trial counsel erred in forbidding defense counsel to examine Officer Madsen in connection with his observations as a police officer. (12) Trial counsel was ineffective in failing to move to sever count eleven, robbery, from the trial of the remaining counts. (13) Trial counsel was ineffective where he failed to offer a meaningful and reliable testing of the adversarial system. (1 (Docket No. 7, Exhibit 1, ¶s 14, 23, 35,45, 46, 71, 72, 79, 85, 89, 96, 101, 102).

[2] Petitioner alleged eight propositions of law as follows: (1) Ohio's rape shield law does not exclude from evidence the presence of a preexisting venereal disease where the symptoms of the disease are the same symptoms alleged to have been the result of a forceful rape. (2) Where an alleged victim attributes her pain as the result of a forceful rape and the same symptoms associated with a preexisting venereal disease, the defense is entitled to confront the victim and inquiry into the preexisting condition in a manner that will reveal the symptoms of the disease but not the nature of the disease. (3) When imposing consecutive sentences, the trial court must clearly align its findings with its reasons on the record and the sentencing hearing. (4) Trial counsel fails to meaningfully test the adversarial system thus is ineffective when counsel fails to raise

7, Exhibit 10). The Supreme Court of Ohio denied Petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question (Docket No. 7, Exhibit 12).

Petitioner filed an application in the appellate court to reopen the direct appeal on January 7, 2004[3](Docket No. 7, Exhibit 13). Petitioner supplemented the application with a claim that the burden of proof was not met in assessing his guilt (Docket No. 7, Exhibit 15).

Petitioner filed a motion to correct the unlawful sentence on August 17, 2004 (Docket No. 7, Exhibit 38). On January 10, 2005, Petitioner filed a motion for summary judgment in the case requesting that the court correct his unlawful sentence (Docket No. 7, Exhibit 39). In the meantime, the Court of Appeals denied the application to reopen on September 14, 2004 (Docket No. 7, Exhibits 16 and 19). Petitioner then filed a memorandum in support o[4]f jurisdiction in the Ohio Supreme Court[5] (Docket No. 7, Exhibit 18). The Supreme Court of Ohio dismissed the appeal as not involving any substantial

---

rudimentary and simple evidentiary objections and implement ordinary trial tactics, thus counsel also fails to offer the effective assistance of counsel. (5) The prosecutor may not impeach a defense witness using police reports that never resulted in criminal charges filed by the witness against the defendant. (6) A prosecutor commits misconduct when he/she repeatedly elicits testimony regarding the incarceration of the defendant during trial despite admonishments from the trial court. (7) The trial court commits reversible error when it orders defense counsel to abandon a line of questioning and if counsel fails the court will allow the prosecutor to introduce evidence of the defendant's otherwise inadmissible prior conviction. (8) Plain error is present when "other acts" evidence is repeatedly received which casts defendant in a disparaging light (Docket No. 7, Exhibit 10).

[3]   Petitioner alleged that trial counsel's performance before and at trial constituted ineffective assistance of counsel. Specifically, counsel failed to properly cross-examine witnesses, failed to object or research and investigate in preparation for trial; the prosecutor denigrated Petitioner and the process to the extent that his right to due process was violated; and Petitioner's right to due process was denied by the introduction of photographs and testimony (Docket No. 7, Exhibit 13).

[4]

   Petitioner argued that (1) a criminal defendant is entitled to the same level of representation on direct appeal as at trial and the failure to raise significant and obvious issues of constitutional magnitude which hold a reasonable possibility of success on appeal; (2) trial counsel failed to properly cross-examine adverse witnesses, raise proper objections, adequately research, prepare and investigate for trial, thus violating the protections of the Sixth Amendment; (3) the prosecutor made illegal references to the Petitioner's post-arrest silence and failure to testify; (4) the trial court admitted evidence of other acts based on a reason not enumerated in FED. R. EVID. 404; and (5) the imposition of a consecutive sentence is violative of Petitioner's right to a trial by jury.

4

question (Docket No. 7, Exhibit 19).

Petitioner then filed a motion in the trial court to set aside or vacate the judgment of conviction (Docket No. 7, Exhibit 20). The trial court denied the motion (Docket No. 7, Exhibit 28). Petitioner appealed the denial to the Court of Appeals (Docket No. 7, Exhibit 29). The Court of Appeals affirmed the denial (Docket No. 7, Exhibits 33 and 34). Petitioner filed a notice of appeal on August 22, 2005[6] (Docket No. 7, Exhibit 35). On November 23, 2005 the Supreme Court of Ohio denied leave to appeal and dismissed the appeal (Docket No. 7, Exhibit 37).

## **JURISDICTION**

A federal court has jurisdiction to consider a petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the grounds that he or she is in custody in violation of the Constitution or laws or treaties of the United States. *Leslie v. Randle*, 296 F.3d 518, 521 (6th 2002) (*citing* 28 U.S.C. § 2254 (2000)). It is a statutory requirement that a habeas corpus petitioner be "in custody" at the time the petition is filed. 28 U.S.C. § 2254(a) (2000).

Petitioner was convicted in the Cuyhoga County Court of Common Pleas. He contends that he was confined at the Mansfield Correctional Institution when he filed his Petition for Writ of Habeas Corpus. Petitioner alleges that he was denied the effective assistance of counsel guaranteed under the Sixth and Fourteenth Amendments, that he was denied a fair trial guaranteed under the Fifth, Sixth, Eighth and Fourteenth Amendments, that he was deprived of the right to confront the witnesses against him as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments, that the claims for prosecutorial misconduct have not been defaulted, that he was deprived of the right to testify and that

---

[6] Petitioner alleged that the (1) application of res judicata to the claim that counsel was ineffective was an abuse of discretion; (2) lack of evidence against him warranted the appointment of expert assistance to present Petitioner's claims; and (3) trial counsel's ineffectiveness warrants a court order that Petitioner's conviction is void (Docket No. 7, Exhibit 36).

a consecutive sentence is violative of his right to trial by jury and due process.

Since Petitioner was in custody at the time the Petition was filed and the grounds for relief allege violations of the United States Constitution, this Court has jurisdiction to issue a writ pursuant to 28 U. S. C § 2241(a) & (c).

## **EVIDENTIARY HEARING**

Pursuant to Rule 8 of the RULES GOVERNING SECTION 2254 CASES, Petitioner seeks an evidentiary hearing to (1) resolve issues of procedural defaults, (2) resolve factual disputes, (3) frame legal issues and (4) consider the merits of his assertion that he is innocent (Docket No. 14). He claims that he has diligently pursued an evidentiary hearing in state court but was denied. Petitioner further claims that his counsel's failure to develop the facts, investigate known witnesses, permit him to testify at trial and demonstrate his innocence deprived him of a full and fair trial.

Pursuant to 28 U. S. C. § 2254(e)(2):

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–

(A)  the claim relies on--
  (i)   a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
  (ii)  a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B)  the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Under AEDPA, a defendant who "failed to develop the factual basis of a claim in State court proceedings" cannot obtain an evidentiary hearing unless he or she satisfies two statutory exceptions. *McAdoo v. Elo,* 365 F.3d 487, 500 (6th Cir. 2004) *cert. denied*, 125 S. Ct. 168 (2004) (*citing* 28 U.S.C. § 2254(e)(2)). However, when a defendant diligently seeks an evidentiary hearing in the state courts in

6

the manner prescribed, but the state courts deny him or her that opportunity, he or she can avoid Section 2254(e)(2)'s barriers to obtaining a hearing in federal court. *Id.* (*citing Williams v. Taylor,* 120 S. Ct. 1479, 1490-1491 (2000)).

A defendant fails to develop the factual basis of a claim only when he or she is at fault for failing to develop the factual record in state court, as when he or his counsel has not exercised proper diligence, or greater fault, in failing to develop the record. *Id.* (*citing Williams*, 120 S. Ct. at 1488; *Moss v. Hofbauer,* 286 F.3d 851, 858-59 (6th Cir. 2002), *cert. denied,* 123 S. Ct. 702 (2002)). The test for "failed to develop" is defined as a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel" in his or her attempts to discover and present a claim in the state court. *Williams,* 120 S. Ct. at 1488; *Thompson v. Bell,* 315 F.3d 566, 594 (6th Cir. 2003) *cert. denied*, 124 S. Ct. 804 (2003). Diligence for purposes of Section 2254(e)(2) depends upon "whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in the state court." *Williams,* 120 S. Ct. at 1489-1490; *Thompson,* 315 F.3d at 594.

Diligent efforts require, at minimum, that the petitioner seek an evidentiary hearing in state court in the manner prescribed by state law. *Williams*, 120 S. Ct. at 1489-1490. A petitioner has not *failed* to develop the factual basis of a claim and an evidentiary hearing is not barred by Section 2254(e)(2) where the petitioner was *unable* to develop the factual basis supporting his claim in state court despite diligent efforts. *Williams,* 120 S. Ct. at 1490-1491. If the habeas petitioner "has diligently sought to develop the factual basis of a claim for habeas relief", but has been denied the opportunity to do so by the state court, Section 2254(e)(2) will not preclude an evidentiary hearing in federal court. *Id.*

Petitioner contends that through a lack of diligence attributable to his trial counsel, the factual basis of his innocence was not developed. Specifically, his counsel failed to investigate available

7

witnesses that would have contradicted the victim's testimony or permit him to testify. Then, his counsel overlooked an opportunity to introduce exculpatory evidence. Having reviewed the court transcript, pleadings, affidavits and declarations, the Magistrate finds that Petitioner has met the burden of showing that he was diligent in efforts to develop the facts that support his contention of innocence. Petitioner expended much effort in seeking an evidentiary hearing to address the sufficiency of counsel's representation in his pleadings requesting post conviction relief (Docket No. 13, Exhibits 13, 15, 38, 39). Petitioner obtained the affidavits and/or declarations of witnesses whose testimony contradicted the victim's testimony or was favorable to the defense. In the alternative, Petitioner argued that the trial court erred in ordering consecutive sentences on all six counts. Petitioner has been diligent in presenting all claims of constitutional error at every stage of the state court proceeding. Therefore, he is not foreclosed from an evidentiary hearing under Section 2254(e)(2)[7].

Thus, the Magistrate recommends that the Court grant Petitioner's request for an evidentiary hearing to (1) demonstrate "actual innocence" and (2) determine the sufficiency of counsel's representation. A telephone status conference is set for **Thursday, January 25, 2007 at 4:00 p.m.** to schedule the evidentiary hearing.

/s/Vernelis K. Armstrong
Vernelis K. Armstrong
United States Magistrate Judge

Date: January 12, 2007

### NOTICE

Please take notice that as of this date the Magistrate's Report and Recommendation

---

[7] Also, Petitioner's allegations of ineffective assistance of trial counsel were not factually explored in the state proceedings (Docket No. 7, Exhibits 10 & 13). Under the two-pronged standard of *Strickland v. Washington*, Petitioner's allegations are sufficient to state an ineffective assistance of counsel claim. 104 S. Ct. 2052 (1984). Accordingly, this is an alternate reason to hold an evidentiary hearing.

attached hereto has been filed.

Please be advised that, pursuant to Rule 72.3(b) of the Local Rules for this district, the parties have ten (10) days after being served in which to file objections to said Report and Recommendation. A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the Sixth Circuit Court of Appeals, in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a Magistrate's Report and Recommendation foreclosed appeal to the Court of Appeals. In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the Court of Appeals to condition the right of appeal on the filing of timely objections to a Report and Recommendation.